# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEE LOWIS,

        Plaintiff,

v.                                                                              Case No. 07-CV-14681-DT

JASON VIRDEN, MARK LANE, RICHARD
POOLE, THOMAS BENNETT and SCOTT
AUSTIN,

        Defendants.
                                                        /

**OPINION AND ORDER GRANTING DEFENDANTS' "MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION," DISMISSING DEFENDANTS THOMAS BENNETT, SCOTT AUSTIN AND RICHARD POOLE AND TRANSFERRING CASE**

Pending before the court is Defendants' February 21, 2008, "Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative Motion for Transfer of Venue." This matter has been fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendants' motion.

## I. BACKGROUND

This lawsuit arose from a business relationship between Plaintiff Lee Lowis and Defendants Jason Virden, Mark Lane, Richard Poole, Thomas Bennett and Scott Austin. Plaintiff is a Michigan resident. Defendants Virden, Bennett and Austin are residents of California and Defendants Lane and Poole are residents of Texas. Defendants each possess varying ownership interests in SGA Global, LLC ("SGA"), a Texas limited liability corporation. In 2005, Plaintiff agreed to invest $150,000 in SGA and acquire a 9% ownership interest. On June 11, 2007, the parties conducted a

conference call during which Defendants voted in favor of adopting amendments to SGA's operating agreement. In September, Defendants utilized these amendments to remove Plaintiff as a member of SGA. On October 31, 2007, Plaintiff initiated the instant action, alleging conversion, statutory conversion, unjust enrichment, fraud/misrepresentation, negligent misrepresentation, breach of fiduciary duty, tortuous interference with a business relationship or expectancy, accounting and shareholder oppression. Defendants have filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, a motion to transfer.

## II. PERSONAL JURISDICTION

### A. Standard

If a district court lacks jurisdiction over the defendants, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(2). "The burden of establishing jurisdiction is on the plaintiff." *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 543 (6th Cir. 1993). If the district court does not conduct an evidentiary hearing on the matter of personal jurisdiction, the plaintiff must make only a prima facie showing of jurisdiction. *See Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). In such a case, the plaintiff must "'demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.'" *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir. 1980) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). Further, a court does not weigh the controverting assertions of the party seeking dismissal. *Dean,* 134 F.3d at 1272 (quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996)).

A federal court's exercise of jurisdiction over litigants in a diversity of citizenship case must be both "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neogen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). Personal jurisdiction issues in Michigan courts are governed by the state's long-arm statute, Mich. Comp. Laws § 600.715. Many Michigan courts and courts within this Circuit have characterized Michigan's long-arm statute as extending as far as the Fourteenth Amendment's Due Process Clause allows. *See Neogen Corp.*, 282 F.3d at 888 ("The 'transaction of any business' necessary for limited personal jurisdiction under § 600.715(1) is established by 'the slightest act of business in Michigan.'") (citing *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1998); *see also Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 830 (E.D. Mich. 2000) ("The standard for deciding whether a party has transacted any business under § 600.715(1) is extraordinarily easy to meet. [T]he only real limitation placed on this [long arm] statute is the due process clause.") (citation omitted). Accordingly, if jurisdiction over Defendants in this court is proper under the Fourteenth Amendment, it also passes muster under Michigan's long-arm statute.

Due process is satisfied if the defendant has "sufficient minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fairplay and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). In analyzing the due process limits on personal jurisdiction, courts distinguish two different means for exercising jurisdiction: general jurisdiction and specific jurisdiction.

General jurisdiction is proper only when a defendant's contacts with the forum state are continuous and systematic, permitting the court to exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. *Helicoperos Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003); *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002).

To establish specific jurisdiction, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Ultimately, the defendant's conduct and connection with the forum must be such that he "should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474. The Sixth Circuit has formulated the following three-part test to capture the due process considerations for specific personal jurisdiction (the "*Mohasco* factors"):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### B. Discussion

### 1. General Jurisdiction

Plaintiff claims that Defendants are subject to general jurisdiction in Michigan because SGA has had continuous and systematic contacts with Michigan, which include (1) setting up a distribution, shipping, and packaging center in Michigan, (2) initiating a lawsuit in Michigan against Plaintiff's business Surface Coatings and (3) soliciting investments here. (Pl.'s Resp. at 12.) Plaintiff argues that, because Michigan has no fiduciary shield doctrine, SGA's contacts should be attributed to Defendants. (*Id.* at 12-13) (citing *Florists' Transworld Delivery, Inc. v. Fleurop Interflora*, 261 F. Supp. 2d 837, 845 (E.D. Mich. 2005)).)

Under the fiduciary shield doctrine, actions that individual defendants take in their official capacity constitute contacts for purposes of establishing personal jurisdiction. *Florists' Transworld*, 261 F. Supp. 2d at 845. It does not follow, however, that Plaintiff's allegations of SGA's activities in Michigan can be attributed to Defendants individually, simply because Defendants each own a portion of SGA. Plaintiff must allege specific acts each Defendant has taken in his personal or official capacity that rise to the level of continuous and systematic contacts with Michigan. Plaintiff has failed to do so. Because the burden is on Plaintiff to establish jurisdiction, *see Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453-454 (6th Cir. 1996) (citing *Carson v. Dunham,* 121 U.S. 421, 425-26 (1887)) (stating that the removing defendants bear the burden of establishing federal subject matter jurisdiction), and Plaintiff has failed to carry his burden, the court cannot find that Defendants are subject to general jurisdiction in Michigan.

## 2. Specific Jurisdiction

### a. Purposeful Availment

This case thus turns on the issue of specific jurisdiction. The first prong of the *Mohasco* inquiry requires the court to determine whether Defendants have purposefully availed themselves of the privilege of acting in Michigan or causing a consequence in Michigan sufficient to vest the court with specific jurisdiction over Defendants. As set forth above, the inquiry is whether, and to what extent, Defendants reached into Michigan. Thus, the court will focus on Defendants' communications with Plaintiff, who was located in Michigan, regarding his investment.

#### i. Defendants Bennett and Austin

It is undisputed that both Bennett and Austin made their investments in SGA after Plaintiff did, and these Defendants played no role in soliciting, negotiating or contracting with Plaintiff for his investment. Nonetheless, both Bennett and Austin participated in the following two conference calls at issue in this case: the June, 2007, conference call during which Defendants voted in favor of adopting amendments to SGA's operating agreement, and the September conference call where Defendants utilized these amendments to remove Plaintiff as a member of SGA.

To constitute purposeful availment, a defendant's contacts with the forum state must "proximately result from actions by defendant *himself* that create a 'substantial connection' with the forum state." *Burger King Corp.*, 471 U.S. at 462 (citation omitted) (emphasis in original). Defendants passively receiving calls in their home state is not enough to conclude that they purposefully sought Michigan opportunities. *See Whitbeck v. Bill Cody's Ranch Inn*, 411 N.W.2d 439, 446 (Mich. 1987). The Sixth Circuit

has explained that the purposeful availment prong focuses on the "quality of the contacts," and that contacts lack quality when they are not initiated by the defendants. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989). Although Plaintiff claims that "Defendants conducted a meeting, via conference call, of all the members of SGA," Plaintiff does not allege that either Bennett or Austin initiated the call. "The burden of establishing jurisdiction is on the plaintiff." *Tobin*, 993 F.2d at 543. Plaintiff has failed to meet his burden by showing how mere participation in two conference calls demonstrates purposeful availment.[1] Therefore, the court will grant Defendants' motion as to Bennett and Austin.[2]

### ii. Defendant Poole

In addition to the previously-mentioned conference calls, in which Plaintiff has not alleged that Poole initiated, Poole sent Plaintiff an e-mail on behalf of Virden, Lane and himself, expressing that they were grateful for Plaintiff's investment in SGA and that they looked forward to their continuing relationship. (Poole E-mail, Pl.'s Ex. D.) Although Poole indicated that Plaintiff was their first choice for an investor, the reasons he stated were Plaintiff's (1) "vast knowledge of the industries we are dealing with and will deal with" and (2) "tenacity, character, and . . . vision for the future of the product's potential." (*Id.*) The fact that Plaintiff was a Michigan resident and had a Michigan business and contacts was not listed as a factor and the fact that Plaintiff happened to be a Michigan resident appears to be a random and fortuitous event.

---

[1]This is particularly true because a Michigan resident participated in only one of the two conference calls, and the other call merely referred to a Michigan resident.

[2]Therefore, the court need not determine whether the remaining *Mohasco* factors are satisfied.

Poole's actions combined–his participation in the conference call and the one e-mail–do not amount to purposeful availment of this forum. In *Whitbeck*, the defendant had even more significant contacts than Poole does here. The plaintiff, Michelle Whitbeck, was injured when she fell off of a horse while she was vacationing at a Wyoming dude ranch. She brought suit against the ranch in Michigan, but the district court determined that the "lone advertisement, the single unsolicited phone call, and the mailing of a brochure [specifically targeting the plaintiff in Michigan] do not, separately or collectively, satisfy the 'minimum contacts' threshold which protects nonresidents under the federal Due Process Clause." 411 N.W.2d at 446. According to the court, "[s]uch tenuous threads, which purportedly link the defendant to Michigan, are not 'akin . . . to a deliberate undertaking to do or cause an act or thing to be done in Michigan . . .'" *Id.* (citing *Khalaf*, 273 N.W.2d at 819).

This case requires the same holding. Defendant's sole contact with Michigan was an email sent to a Michigan resident and his participation in one telephone call with a Michigan resident and one telephone call regarding a Michigan resident. On these facts, Plaintiff cannot demonstrate that Defendant engaged in a "deliberate undertaking to do or cause an act to be done in Michigan or [in] conduct which can be properly regarded as a primate generating cause of the effects resulting in Michigan. . . ." *See Khalaf*, 273 N.W.2d at 819.[3]

---

[3]Accordingly, the court need not reach the second and third *Mohasco* factors.

### iii. Defendants Virden and Lane

With regard to Virden and Lane, in addition to participating in the aforementioned conference calls, Plaintiff alleges frequent and ongoing contact between Virden, Lane and Plaintiff. Specifically, Plaintiff claims that Virden called him two times while Plaintiff was in Michigan to entice Plaintiff to invest money in SGA, before sending Plaintiff a written offer to him in Michigan. (Pl.'s Aff. at ¶¶ 3-5, Pl.'s Ex. 5.) After Plaintiff decided to invest in SGA, both Virden and Lane personally traveled to Michigan to attend a trade show, but arrived one day earlier than necessary to enable them to discuss with Plaintiff the possibility of an additional investment. (*Id.* at ¶ 9.) Moreover, Plaintiff alleges that after this initial investments, "phone calls between Lane and me occurred daily, often for 45 minutes to over an hour per call. These call usually occurred on my drive home or while at home in the evening in Michigan." (*Id.* at 10.) As to Virden, Plaintiff claims that his "[p]hone conversations with Jason Virden became more frequent as well. Jason Virden and I spoke 3 or 4 times a week and exchanged frequent emails. The vast majority of these communications took place while I was in Michigan." (*Id.*) During these conversations, the parties discussed the "technical" and "marketing/financial" aspects of their joint business venture. (*Id.*)

While it is true that both Virden and Lane vigorously dispute the extent and significance of their contacts with Plaintiff, the court must accept Plaintiffs allegations as true. Because the court is not conducting an evidentiary hearing, the court must not weigh Defendants' controverting assertions.[4] *Dean,* 134 F.3d at 1272 (quoting

---

[4]The court finds that the use of an evidentiary hearing in this case would not be appropriate. The parties' dispute regarding Defendants' activities that allow the exercise

9

*CompuServe, Inc.,* 89 F.3d at 1262). Thus, the court finds that Plaintiff has met his burden of establishing that Virden and Lane purposefully availed themselves of the privilege of acting in Michigan or causing a consequence in Michigan.

**b. Whether the Cause of Action Arises out of Defendants' Contacts with Michigan**

The second *Mohasco* factor, whether the cause of action arises from the defendant's activities in the forum, is also satisfied in this case for Virden and Lane. This lawsuit is principally a multi-count case centering around the injuries Plaintiff allegedly sustained from Defendants' actions in soliciting his investment and divesting him of his ownership interest. These are the very actions that form the basis of Defendants' contacts with Michigan, and therefore Plaintiff's claims arise from Defendant's activities in the forum.

**c. Reasonableness**

Finally, the court determines that Virden and Lane's frequent and ongoing contacts with Plaintiff, while he was in Michigan, regarding his investment in SGA are sufficiently substantial to make jurisdiction over them in Michigan reasonable. *Mohasco Indus., Inc.*, 401 F.2d at 381. Defendants' arguments to the contrary focus only on Defendants' decision to remove Plaintiff as a member of SGA and ignore a majority of Plaintiff's claims. Plaintiff's claims of fraud, misrepresentation, negligent misrepresentation, breach of fiduciary duty, tortuous interference with a business relationship or expectancy, accounting and shareholder oppression all relate, in part, to

---

of personal jurisdiction are the same factual disputes which will control the outcome of this litigation. Conducting an evidentiary hearing on this issue would ultimately entail the determination of Plaintiff's entire case, which is inappropriate at this stage of the litigation.

Defendants' actions in soliciting Plaintiff's investment and in their general management of SGA. Accordingly, Defendants' argument is misplaced and will be rejected. The court is satisfied that Plaintiff has met his burden of establishing a prima facie case of personal jurisdiction as to Virden and Lane.

### III. VENUE

Transfer of proper venue is governed by 28 U.S.C. § 1404(a), which provides that: "[f]or the convenience of parties and witnesses, in the interest of justice a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *VanDusen v. Barrack*, 376 U.S. 612, 622 (1964)). "[A] district court has broad discretion to grant or deny a motion to transfer [a] case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (citations omitted).

"To transfer an action under section 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart*, 487 U.S. at 29.

As an initial matter, the court finds that this case could have been brought in Texas. All of the parties are, or were, members of SGA, a Texas corporation. SGA's

11

operating agreement includes a section entitled "Governing Law,"[5] which provides that (1) "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Texas" and (2) "[e]ach Member, by signing this agreement, hereby submits to personal and subject matter jurisdiction in the State of Texas of any dispute between or among the Members, the LLC, and the LLC Managers connected to or regarding the business of, or investment in, the LLC."  (Operating Agreement at § 10.4, Defs.' Ex. B.)  The court finds the parties agreed to a choice of forum provision in favor of Texas courts because the phrase "hereby submits" provides an indication of the parties' contractual agreement that litigation arising under the contract would be handled in Texas.  It is settled that forum selection clauses are to be read as "prima facie valid," and are enforceable in federal courts.  *Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972).  In the instant case, there is no question that this action is "connected to or regarding the business of, or investment in, the LLC," (Operating Agreement at § 10.4, Defs.' Ex. B), and no exceptional circumstances are present that would lead the court to determine the contract is unenforceable.  Therefore, the court finds that this contractual provision is a valid forum selection clause in favor of Texas courts and applies to the present litigation.

Although the court agrees with Plaintiff that forum selection clauses "are not dispositive for determining [v]enue," (Pl.'s Resp. at 20), the Supreme Court has stated that "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus.  The

---

[5]Despite its title, this provision both provides a choice of law provision and a forum selection clause.  (Operating Agreement at § 10.4, Defs.' Ex. B.)  Therefore, the court rejects Plaintiff's claim that this provision is merely a choice of law provision.

12

flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences." *Stewart*, 487 U.S. at 29-30. Applying the foregoing standard to this case, the bargained-for forum selection clause in favor of the Western District of Texas should be given significant weight.

In assessing the possible inconvenience that a transfer of venue would present, a district court should consider factors such as the location of the parties, the location of the witnesses, the relative ease of access to sources of proof, the locus of operative facts, and the forum's familiarity with the governing law. *Overland, Inc. V. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). Here, the convenience of the parties appears to be equally balanced. Plaintiff's primary place of business is in Michigan, while Lane's principal place of business is in Texas. (Compl. ¶ 2.) The distance in this case is less than that in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), where the Supreme Court upheld a transfer from the State of Washington, Plaintiff's principal residence, to Florida, Defendant's principal place of business, pursuant to a forum selection clause. The court finds that it is equally inconvenient for Defendant to defend the action in this court as it is for Plaintiff to try its action in Texas. Finally, the fact that Virden is a California resident favors neither forum.

SGA itself, however, is a Texas entity. The parties' relationship and rights in SGA are memorialized in SGA's operating agreement, which provides that Texas law shall govern any dispute regarding the operating agreement. (Operating Agreement at § 10.4, Defs.' Ex. B.) Although a Michigan federal court is quite capable of interpreting and applying Texas law, a federal court in Texas certainly has more experience in doing

so.  Furthermore, Texas would have a greater interest in enforcing its own laws relating to disputes between members and former members of a Texas corporation.  "It is axiomatic that the construction of state law is best given to a court most familiar with it." *Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214, 219 (E.D. Mich. 1992).

Thus, the interests of justice favor a transfer of venue to the previously agreed upon Texas forum.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  The fact that Plaintiff chose to file this lawsuit in Michigan will not prevent a transfer under these circumstances.  *See Detroit Coke Corp.*, 794 F. Supp. at 219 (Plaintiff "made [his] 'choice' of forum when [he] signed the Agreement which contained the forum selection clause").

### IV.  CONCLUSION

IT IS ORDERED that Defendants' "Motion to Dismiss or Lack of Personal Jurisdiction or in the Alternative Motion for Transfer of Venue" [Dkt. # 9] is GRANTED.  Defendants Thomas Bennett, Scott Austin and Richard Poole are DISMISSED and the clerk of the court is directed to TRANSFER the above-captioned matter as it relates to the remaining Defendants to the United States District Court for the Western District of Texas.

                                              s/Robert H. Cleland  
                                              ROBERT H. CLELAND  
                                              UNITED STATES DISTRICT JUDGE

Dated:  April 17, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 17, 2008, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\07-14681.LOWIS.GrantMotTransferVenue.wpd